IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MADELINE ANDINO RIVERA | : | CIVIL ACTION |
| v. | : | |
| NANCY BERRYHILL, Acting Commissioner of Social Security | : | NO. 18-4342 |

O P I N I O N

JACOB P. HART  DATE: 5/28/2019
UNITED STATES MAGISTRATE JUDGE

Madeline Andino Rivera brought this action under 42 USC §405(g) to obtain review of the decision of the Commissioner of Social Security denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). She has filed a Request for Review to which the Commissioner has responded. As set forth below, I will reverse the decision of the Commissioner, remanding the case to the agency for a calculation of benefits.

I.  Factual and Procedural Background

Andino Rivera was born on January 22, 1975. Record at 131. She either completed high school, or left during the 12th grade. Record at 177, 433, 792. She worked in the past in a warehouse, and as a laundry aide in a nursing home. Record at 199.

On December 17, 2013, Andino Rivera filed applications for DIB and SSI. Record at 131, 138. In them, she alleged disability beginning January 2, 2013, on the basis of migraine headaches, impairments of the cervical and lumbar spine, irritable bowl syndrome (IBS), and mental illness. Record at 176. Her applications were denied on January 24, 2014. Record at 77, 82. Andino Rivera then requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). Record at 88.

A hearing was held in this matter on August 28, 2015.  Record at 28.  On October 13, 2015, the ALJ issued a written decision denying benefits.  Record at 13.  The Appeals Council denied her request for review on February 7, 2017.  Record at 2.  Andino Rivera then filed an action in this Court, which was captioned 17-cv-01576.  Record at 848.  That case was terminated, however, when the Appeals Council voluntarily remanded Andino Rivera's case to the ALJ on January 10, 2018.  Record at 848.

A second hearing was held before the same ALJ on May 31, 2018.  Record at 785.  By written decision dated July 18, 2018, the ALJ again denied benefits.  Record at 760.  Because remand was granted during the pendency of a federal action, review by the Appeals Counsel was not necessary at this point.  Andino Rivera then filed this action.

II.     Legal Standards

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985).  Substantial evidence is relevant evidence viewed objectively as adequate to support a decision.  Richardson v. Perales, supra, at 401; Kangas v. Bowen, 823 F.2d 775 (3d Cir. 1987); Dobrowolsky v. Califano, 606 F.2d 403 (3d Cir. 1979).  Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards.  Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). As explained in the following agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled. (iv). At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v). At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 CFR §404.1520 (references to other regulations omitted).

III.     The ALJ's Decision and Andino Rivera's Request for Review

In his second decision, the ALJ determined that Andino Rivera suffered from the severe impairments of IBS, migraines, cervicalgia, mood disorders, asthma, myofascial pain syndrome and degenerative disc disease. Record at 766. He found that she did not have an impairment, or any combination of impairments, which met or medically equaled a listed impairment. Record at 769.

The ALJ determined that Andino Rivera retained the residual functional capacity ("RFC") to engage in light work which did not involve exposure to excessive pollutants, and which only required "little detailed instructions." Record at 771.

3

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ found that Andino Rivera could work as a sorter, ticket taker or retail marker. Record at 776. He decided, therefore, that she was not disabled. Id.

In her Request for Review, Andino Rivera argues that the ALJ (1) should have found her migraine headaches to meet a listed impairment, and otherwise failed to adequately consider the effect of her migraines on her ability to work; (2) underestimated the limitations caused by her other conditions; (3) wrongly found her capable of light work; and (4) erred in his evaluation of the opinion evidence. She also argues that (5) the vocational testimony was defective because it was based upon inadequate hypothetical questions.

IV.     Discussion

A.      Migraine Headaches

The ALJ found that none of Andino Rivera's impairments met or medically equaled a listed impairment set forth at 20 CFR Part 404, Subpart P, Appendix 1. Record at 769-770. Specifically regarding her headaches, he wrote: "There is not a Listing for migraines. The undersigned has considered Listing 11.00 and finds it is not satisfied." Andino Rivera argued that this was not an adequately developed finding, and that it was erroneous: she claims that her migraine headaches met the Listing for non-convulsive epilepsy, at 11.02.

In support of this argument, she cites an example given in Programs Operation Manual System ("POMS"), the internal Social Security procedures manual, which describes a claimant with migraine symptoms similar to hers, and states that the claimant's "findings are at least of equal medical significance" as those in Listing 11.03, which it calls "the most closely analogous

listed impairment." POMS 24505.015. The POMS section concludes: "Therefore, the claimant's impairment medically equals listing 11.03." Id.[1]

However, it is established in the Third Circuit that the POMS manual lacks the force of law. See Bordes v. Commissioner of Soc. Sec., 235 Fed. Appx. 853, 859 (3d Cir. 2007), citing Schweiker v. Hansen, 450 U.S. 785, 789 (1981), Edelman v. Commissioner of Soc. Sec., 83 F.3d 68, 71 n.2 (3d Cir. 1996), and SSA's Program Operations Manual System, Disclaimer, https://s044a90.ssa.gov/apps10/poms.nsf/aboutpoms: ("The POMS states only internal SSA guidance. It is not intended to, does not, and may not be relied upon to create any rights enforceable at law by any party in a civil or criminal action").

This being the case, the ALJ did not err simply because he reached a different conclusion than that given in an example in POMS 24505.015. Nevertheless, I agree with Andino Rivera that the ALJ's discussion of the frequency and severity of her headaches was inadequate, whether considered at stage three or stage five of the sequential analysis.

The ALJ relied upon three treatment notes in which Andino Riveras's neurologist, Frank Zhang, MD, wrote that she "was managing fairly well in her daily activities." Record at 767. This is an unduly selective view of the treatment notes. In each one, Dr. Zhang actually described Andino Rivera as suffering from frequent and serious headaches, but added that she was "otherwise" managing fairly well.

First, on August 30, 2013, Dr. Zhang wrote that Andino Rivera suffered more than fifteen days per month from headaches of 10/10 intensity, with nausea and photophobia, which lasted from three to five days. Record at 386. Recently, she had been treated in the emergency room

---

[1] There is no current Listing 11.03. As of September 29, 2016, the epilepsy listings were combined and are now found at Listing 11.02. This is the appropriate listing to use in this case. 81 FR 43048-01, 2016 WL 3551949 (Fed. Reg. July 1, 2016). However, this is of no real importance here, since the requirements of the former Listing for "non-convulsive epilepsy" are essentially similar to the present sub-listing for dyscognitive seizures, at 11.02D.

because her prescribed medication had been ineffective. Id. Then, he wrote: "Otherwise, she is managing fairly well on her daily activities." Id. After their next appointment, on November 27, 2013, Dr. Zhang wrote that his patient continued to have "chronic daily headache (more than 15 days of headache per month and more than 4 hours of headache per episode), tried several medications and failed." Record at 383. He prescribed a new medication, and Botox treatments. Record at 384. He added: "Otherwise, she is managing fairly well on her daily activities." Record at 382.

Finally, on October 17, 2016, Dr. Zhang wrote that, in the two years since he had seen Andino Rivera, "her daily headache has no changes and medications didn't help." Record at 970. Botox "didn't help that much" and caused a temporary eyelid droop. Id. "Otherwise, she [was] managing fairly well on her daily activities." Id.

The ALJ also appears to rely upon Dr. Zhang's description of normal neurological and physical examinations. Record at 767. In assessing Andino Rivera's testimony, the ALJ wrote: "She does not have any ongoing neurological deficits, as one would expect to find with such severe allegations." Record at 772. However, it is not clear that neurological or physical deficits would be observable in a person who suffers from migraine, at a moment when they are not experiencing an attack.

The ALJ relied upon the opinion of the agency reviewing expert as well, writing: "Louis Tedesco, MD, opined that the claimant, despite migraines, cervical disc disease, and history of cervical radiculopathy, could perform light exertional work with postural limitations." Record at 773. This is true. Record at 59. However, it still leaves unresolved the question of how a claimant could perform a 40-hour workweek if – as Dr. Zhang reported – she suffers from headaches lasting more than four hours on fifteen days out of the month.

6

It is possible that Dr. Tedesco simply disbelieved Andino Rivera's description of the frequency and severity of her headaches. He wrote: "Claimant is partially credible." Record at 60. In fact, Andino Rivera testified that she suffered from migraine headaches five days per week. Record at 793. On November 9, 2015, however, she told her general practitioner that she got migraine headaches twice a week. Record at 1189.

Despite this, Andino Rivera has a consistent history of treatment for migraine headaches, including trips to the emergency room. Record at 319, 330, 336, 651. Some of this treatment took place well before she filed her application for benefits. On December 18, 2012, she told emergency room personnel that she was suffering from two to three migraines per week, and had already been put on Nadolol by a neurologist. Record at 319. On June 21, 2013, she sought treatment for a headache which had started the day before. Record at 330. On August 27, 2013, Andino Rivera was back in the emergency room for a headache, and reported "chronic, daily migraines." Record at 338. She saw Dr. Zhang two days later. Record at 386.

Dr. Zhang's notes show that, over her years of treatment, Andino Rivera has taken Topomax, Imitrex, Nadolol, Sumavel, Butterbur, and Diclofenac to treat her migraine headaches. Record at 382, 425. She has undergone Botox injections. Record at 425. At her emergency room visits, she was given Toradol. Record at 330, 654, 651. She has no history at all of inappropriate or recreational substance use.

Andino Rivera has several times told treatment providers that her migraine headaches come with photophobia, i.e., that they are sensitive to light. Record at 319, 386, 331. This is consistent with her testimony that the sun and light bother her when she has a migraine. Record at 792. Further, her testimony that she had to take FMLA leave when she last worked because of

7

her migraines is supported by some evidence. Record at 270, 795. (Three other mentions of FMLA in the Record pertain to neck and back pain; 267, 274, 377).

Even without considering Andino Rivera's headaches in combination with her other severe impairments, it is clear that migraine headaches every week, each requiring several hours in a darkened room, are inconsistent with full-time work. The testimony of the vocational expert confirms this. Record at 820.

In some circumstances, remand might have been appropriate to permit the ALJ to more explicitly discuss his analysis of the evidence regarding Andino Rivera's migraine headaches. Here, however, this 1313-page record appears to be fully developed, and substantial evidence exists which indicates that Andino Rivera suffers from disabling migraine headaches more than once per week. There is no evidence contradicting this, despite a few inconsistencies as to the exact number of migraines. These circumstances permit reversal without remand. Morales v. Apfel, 225 F.3d 310, 320 (3d Cir. 2000), citing Podedworny v. Harris, 745 F.2d 210, 223 (3d Cir. 1984).

Further, there have already been two hearings in this case, two decisions issued by the same ALJ, and two appeals to this Court. Reversal rather than remand can be appropriate where remand will result in considerable delay which is not attributable to the claimant. Morales, supra; Burton v. Berryhill, 267 F. Supp.3d 520, 529-30 (E.D. Pa. 2017). Although this case does not present the most extreme example of delay (in Burton, the claimant had filed his application thirteen years earlier), a third opportunity for the ALJ to prepare a decision which adequately addresses all of the medical evidence seems excessive. For this reason, I will not order another remand, but merely return the matter to the Agency for a calculation of benefits.

B.  The Remainder of Andino Rivera's Claims

Andino Rivera's claims other than that pertaining to her migraine headaches appear to have been adequately addressed by the ALJ. As I have already decided that Andino Rivera will be awarded benefits, I will not address her other claims in the form that she has set them out. It is sufficient to show that substantial evidence supports the ALJ's decision with respect to the impairments as to which Andino Rivera has raised objections (for example, she has not raised any argument regarding her asthma, so it is not addressed below).

1.  IBS

Andino Rivera argues that her IBS caused her to be absent from her work station often enough to render her unemployable. She testified she went to the bathroom perhaps "every hour, half an hour, 45 minutes, fifteen minutes, it depends how I feel that day," for periods of up to 30 or 40 minutes. Record at 809.

The ALJ, however, decided that "the absenteeism stated by the claimant regarding her IBS appears to be overstated. It is not consistent with the medical records, which indicate only occasional symptoms." Record at 772. He acknowledged that Andino Rivera had complained to her general practitioner of abdominal pain, frequent diarrhea, constipation, and nausea on January 29, 2014. Record at 595. She also reported cramping, bloating and diarrhea to Dr. Tomasz Nieriarowski, her treating gastroenterologist in 2013. Record at 737-740. Dr. Nieriarowski noted on October 9, 2013, that Andino Rivera's IBS was not responding well to medication. Record at 738.

Nevertheless, the ALJ noted that Andino Rivera only complained to Dr. Nieriarowski of "mild" diarrhea three times per day. Record at 739. (In fact, on October 9, 2013, she complained of diarrhea 3-5 times per day, (Record at 738), but this would still be much less than

9

diarrhea on the hour or quarter hour which she described in her testimony). Moreover, as the ALJ also noted, notes from Dr. Nieriarowski dated January 18, 2018, report only "occasional symptoms at times", including "diarrhea with anxiety." Record at 1303. Her colonoscopy was normal. Record at 1306. The ALJ's conclusion that Andino Rivera had exaggerated her symptoms from IBS was therefore supported by substantial evidence.

2.  Cervicalgia

An MRI of Andino Rivera's cervical and thoracic spine taken on November 11, 2013, showed spondylolisthesis at many levels with minimal stenosis at C3/C4, C4/C5, C5/6, and C7/T1, as well as "minimal to moderate" stenosis at C6/C7. Record at 1310. An MRI from May 12, 2017, was largely unchanged, although there was a "slight progression" in disease at C5/C6. Record at 1209. A January 15, 2018, CT scan showed no stenosis, although some foraminal narrowing. Record at 1207.

The ALJ took note of this objective testing. Record at 767. In accordance with this evidence, he ALJ found Andino Rivera to suffer from severe cervicalgia, and limited her to light work, as opposed to her former work, which was performed at the medium exertionary level. Record at 46. The ALJ also recognized that Christopher Wagener, MD, offered Andino Rivera the option of undergoing a cervical discectomy and fusion at C5-6. Record at 1214.

Andino Rivera, however, points to a report prepared by her physiatrist, Scott Stoll, MD. Record at 421. In the report, dated December 22, 2014, Dr. Stoll indicated that Andino Rivera could sit only 0-2 hours, and could stand or walk for only one hour in an eight-hour workday. Id. She would need to alternate between sitting and standing every half hour. Id. She could lift and/or carry less than ten pounds occasionally, and ten pounds rarely. Id.

The ALJ wrote that he would not give Dr. Stoll's report "significant weight." Record at 773. He explained: "It is based on only three months of treatment and limited findings on exam." Id. There is some justification to Andino Rivera's argument that this is a thin basis upon which to base the rejection of a report of a treating expert. She points out, for one thing, that Dr. Stoll had actually treated her for eleven months at the time he prepared the report. Record at 577 (treatment note by Dr. Stoll dated January 29, 2014). More generally, it is not clear why it would take a specified amount of time for a qualified expert to develop an opinion as to the physical capacities of a patient.

Nevertheless, in evaluating the limitations caused by Andino Rivera's disorder of the cervical spine, the ALJ also looked to the opinion of Dr. Tedesco, the reviewing agency expert. Record at 773. Dr. Tedesco opined that Andino Rivera could engage in light work with only occasional climbing, kneeling, crouching and crawling. Record at 59-60. The ALJ wrote that the records which post-dated this opinion did not show a significant worsening of her impairments. Record at 773.

Further, as the Commissioner has pointed out in her Response, on January 16, 2018, Dr. Wagener found Andino Rivera to be essentially normal to physical examination. She had a normal gait, and normal heel and toe walk. Record at 1213. She had no neurological symptoms. Id. Her spine was well-aligned, although she had tenderness over her cervical paraspinal region "with no trigger points," and decreased extension. Id. She had full strength in all muscles, and normal reflexes. Id. She had a normal Spurling's test, bilaterally, which indicated an absence of cervical radicular pain. Id. These results are particularly interesting because Dr. Stoll mentioned "trigger points and Spurling's signal" as supporting his assessment of extreme limitations. Record at 422.

11

Therefore, although the ALJ's assessment of the medical records was imperfect, substantial evidence generally supported his conclusion that Andino Rivera's cervicalgia did not prevent her from engaging at work at the light exertionary level. It is notable, however, that the ALJ did not explain why he declined to include in his RFC assessment the postural limitations imposed by Dr. Tedesco, whose findings were otherwise adopted.

3.  Mood Disorders

As the ALJ acknowledged, Andino Rivera was diagnosed on October 28, 2014, at the Lehigh Valley Community Mental Health Center with major depressive disorder with psychotic features, generalized anxiety disorder and post-traumatic stress disorder. Record at 434, 769. At that time, she was noted to be calm, well groomed, and well oriented, although anxious. Record at 434. Her memory, insight and judgment were generally good, and her intelligence was estimated to be average. Id. Andino Rivera stated that she had never had a psychiatric hospitalization, and had never made a suicide attempt. Id. However, she experienced anxiety, poor concentration, and poor self-esteem. Id. She also stated that she had experienced auditory hallucinations when lying in bed "on and off for several years." Record at 433-4. Andino Rivera was prescribed medication, and participated in therapy.

In 2016, Andino Rivera began treating instead at Bet-El Counseling Services. Record at 1247. In an intake report dated March 23, 2016, she was diagnosed with major depressive disorder. Record at 1250.

Lucila Villaluz, MD, a psychiatrist at Bet-El, completed a Medical Source Statement dated March 8, 2018. Record at 1229. In it, she rated Andino Rivera as "poor" in almost every work-related mental ability, including the ability to remember locations and work-like procedures, maintain attention and concentration for extended periods, work with or near others

12

without being distracted by them, and complete a normal workday or workweek. Id. Dr. Villaluz wrote: "Patient's severe depression and anxiety negatively impacts on her ability to focus and concentrate in using her best judgment. Patient has [illegible] physical problems which affects her ability to work." Id.

> The ALJ wrote:
>
> This opinion is not given significant weight. The claimant's mental status exams were essentially within normal limits except for a depressed mood and affect at times. The claimant got along well with her treating sources. The claimant's treating records regarding her physical impairments do not document such severe mental limitations. This opinion also considers a combination of the claimant's physical and mental impairments and Dr. Villaluz is not qualified to provide an opinion regarding the claimant's physical impairments. The undersigned also notes that this opinion does not indicate that the claimant had any ongoing auditory hallucinations.

Record at 774.

Instead, the ALJ credited the opinion of Melissa Diorio, Psy.D., who reviewed Andino Rivera's records for the state agency. Record at 774. (The ALJ wrote that he gave Dr. Diorio's opinion "some weight," but he did not criticize it in any regard). In evidence dated January 17, 2014, Dr. Diorio wrote that Andino Rivera suffered from an affective disorder and an anxiety-related disorder, and that she had moderate difficulties in maintaining concentration persistence and pace. Record at 57. However, according to Dr. Diorio, Andino Rivera was only mildly restricted in her activities of daily living, and in maintaining social functioning. Id. She was not significantly limited in her ability to carry out very short and simple instructions, maintain regular job attendance, and make simple work-related decisions. Record at 61.

The ALJ wrote that Dr. Diorio's opinion was consistent with the treatment record and "stability in the more acute symptoms" at the time of his decision. Record at 774. Although Dr. Diorio's opinion was authored several years before Dr. Villaluz's, the ALJ noted: "The updated records do not indicate any worsening of the claimant's symptoms." Id. He wrote that he was

13

limiting Andino Rivera "to work that is, essentially, unskilled" to address her symptoms of mental health.

Andino Rivera argues that the ALJ should have weighed Dr. Villaluz's opinion more heavily than that of Dr. Diorio, because Dr. Villaluz had a much stronger basis for her views, given her longevity of treatment and personal observation of Andino Rivera. Indeed, even had Dr. Villaluz treated Andino Rivera for a shorter time, she would still have the advantage in this regard over Dr. Diorio, who never saw her.

It is clear from the record that Andino Rivera has longstanding mood disorders which appear to interact with her IBS and migraine headaches. Record at 465, 1303. Nevertheless, the ALJ was correct in observing that the record does not reflect significant problems with Andino Rivera's interpersonal interactions. At Lehigh Valley, she was always described as cooperative, coherent, and calm, and was said to be fully oriented and normal in appearance. Record at 451, 462, 465, 468, 470, 473, 478- 489, 493-504. Similarly, at her intake at Bet-El, Andino Rivera was noted to be well-groomed, calm, cooperative, interested, friendly, and attentive, as well as fully oriented with normal speech and a normal thought process and content. Record at 1244-5.

Further, Andino-Rivera did not have a particularly notable history of mental health treatment. As noted above, she was never hospitalized for mental treatment and had never made a suicide attempt. It does not appear that she ever had therapy more than weekly. Thus, substantial evidence supported the ALJ's conclusion that the record did not support Dr. Villaluz's finding of extreme limitations.

Andino-Rivera also argues that the ALJ did not address her delusions and hallucinations. However, as noted above, the ALJ specified that Dr. Villaluz did not mention hallucinations. The ALJ's observation of stability in Andino Rivera's "more acute symptoms" was probably also a reference to an absence of recent delusions and hallucinations.

4.      The Vocational Expert Testimony

Finally, Andino Rivera argues that the vocational testimony was flawed because the hypothetical questions to the vocational expert did not include all the limitations supported by the substantial evidence of record, citing Chrupacala v. Heckler, 829 F.3d 1269, 1275 (3d Cir. 1987).  A hypothetical question to an expert need not include every limitation alleged by a claimant, but it must include those which are credibly established.  Zirnsak v. Colvin, 777 F.3d 607, 615 (3d Cir. 2014), citing Rutherford v. Barnhart, 399 F.3d 546, 554 (3d Cir. 2005).

In that sense, the adequacy of hypotheticals posed to a vocational expert depends on the validity of the ALJ's assessment of the medical evidence.  In this case, the ALJ's assessment of the medical evidence regarding Andino Rivera's migraine headaches was inadequate.  To the extent that the ALJ might have found Andino Rivera further limited if he had thoroughly addressed this evidence, the hypothetical questions he posed to the vocational expert were defective.

V.  Conclusion

In accordance with the above discussion, I conclude that Andino Rivera's Request for Review should be granted, the decision of the Commissioner reversed, and the matter remanded to the Agency solely for the calculation of benefits.

BY THE COURT:

/s/Jacob P. Hart
_____
JACOB P. HART
UNITED STATES MAGISTRATE JUDGE